UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

LENORE B.,[1]

        Plaintiff,

    v.

KILOLO KIJAKAZI,

        Defendant.

Case No.  21-cv-09662-RMI

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 19, 20

**INTRODUCTION**

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits under Title II of the Social Security Act. *See* Admin. Rec. at 1085-1114.[2] In August of 2015, Plaintiff filed an application for Title II benefits alleging an onset date of February 4, 2011.[3] *Id.* at 299. On November 24, 2017, an ALJ entered an unfavorable decision, finding Plaintiff not disabled. *Id.* at 13-27. In January of 2019, the Appeals Council denied Plaintiff's request for review. *Id.* at 1-4. Plaintiff sought judicial review of the decision in March of 2019 (*see id.* at 1176-99), but in November 2019 the parties stipulated to a voluntary remand of the case to the Commissioner for further proceedings. *See id.* at 1200-04. The

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in ninety-six attachments to Docket Entry #16. *See* (dkts. 16-1 through 16-96).

[3] Plaintiff has since amended her alleged onset date to June 9, 2013. AR at 1462.

United States District Court
Northern District of California

1    Appeals Council vacated the 2017 decision and remanded the case to an ALJ, finding that "[t]he

2    hearing decision d[id] not contain an adequate evaluation of the report by James O'Dowd, Psy.D. .

3    . . ." *Id.* at 1202. The Council also instructed the ALJ to "[g]ive further consideration to the

4    claimant's maximum residual functional capacity during the entire period at issue and provide

5    rationale with specific references to evidence of record in support of assessed limitations." *Id.* at

6    1203.

7         After a hearing in July of 2021 (*see id.* at 1116-47), the ALJ issued a second unfavorable

8    decision on September 29, 2021, finding Plaintiff not disabled. *Id.* at 1085-1104. A few months

9    later, in December of 2021, Plaintiff sought review in this court (*see* Compl. (dkt. 1) at 1-2) and

10   the instant case was initiated. Because Plaintiff did not file written exceptions within thirty days of

11   the ALJ's decision nor did the Appeals Council otherwise assume jurisdiction within sixty days

12   without written exceptions being filed (*see* 20 C.F.R § 404.984(a)), the ALJ's decision is the "final

13   decision" of the Commissioner of Social Security which this court may review. *See* 24 U.S.C. §§

14   405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 3 &

15   11), and both parties have moved for summary judgment (dkts. 19 & 20). For the reasons stated

16   below, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

17                                    **LEGAL STANDARDS**

18        The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

19   conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

20   aside a denial of benefits if it is based on legal error. *Flaten v. Sec'y of Health and Human Servs.*,

21   44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout

22   administrative law and directs courts in their review of factual findings at the agency level. *See*

23   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such

24   relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

25   (quoting *Consol. Edison Co. v. NRLB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*,

26   108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are

27   supported by substantial evidence," a district court must review the administrative record as a

28   whole, considering "both the evidence that supports and the evidence that detracts from the

United States District Court
Northern District of California

1   Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The

2   Commissioner's conclusion is upheld where evidence is susceptible to more than one rational

3   interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### SUMMARY OF THE RELEVANT EVIDENCE

5        Plaintiff raises four claims, the first—and perhaps most important—of which assigns error

6   to the ALJ's failure, at step two of the sequential analysis, to discuss or analyze a number of

7   Plaintiff's mental and physical impairments. *See* Pl.'s Mot. (dkt. 19) at 5. Because the court finds

8   reversible error at step two, requiring remand, the following is a recitation of the evidence that is

9   relevant to that claim.

10   <u>Cervical Radiculopathy and Relevant Symptoms</u>

11        Magnetic resonance imaging ("MRI") of the Plaintiff's spine during the relevant period

12   revealed moderate to severe foraminal stenosis at several levels. *See* AR at 640, 854, 2919, 3200,

13   3312. Foraminal stenosis, also referred to as foraminal narrowing, is a common cause of cervical

14   radiculopathy. *See* Lee, Han-Dong, *Is the Severity of Cervical Foraminal Stenosis Related to the*

15   *Severity and Sidedness of Symptoms?*, Healthcare, available at: https://www.ncbi.nlm.nih.gov/pmc

16   /articles/PMC8701450/ (lasted visited Oct. 5, 2022 at 4:03 p.m.). Plaintiff also displayed other

17   common symptoms of cervical radiculopathy, including decreased range of motion (*see* AR at

18   569, 582, 865, 1543-44), tenderness (*see id.* at 566, 682, 887, 1014), diminished sensation (*see id.*

19   at 1529, 1542), and diminished pinch strength (*see id.* at 1544-45). *See Radiculopathy*, Penn

20   Medicine, available at: https://www.pennmedicine.org/for-patients-and-visitors/patient-informatio

21   n/conditions-treated-a-to-z/radiculopathy (last visited Oct. 5, 2022 at 4:19 p.m.). Upon an

22   evaluation of Plaintiff and a review of the above-mentioned evidence, Dr. Lavorgna diagnosed

23   Plaintiff with cervical radiculopathy. *See* AR at 1510. Other physicians also referenced Plaintiff's

24   cervical radiculopathy in recommending treatment plans. *See, e.g.*, *id.* at 2108 ("[W]ill refer to

25   spine clinic for further evaluation and management of cervical radiculopathy.").

26   <u>Posttraumatic Stress Disorder ("PTSD"), Personality Disorder, and Learning Disorder</u>

27        Following an evaluation of Plaintiff in 2017, Eleanor Souza MFT diagnosed Plaintiff with

28   PTSD, among other mental conditions. *Id.* at 1073. This PTSD diagnosis was echoed by Cyndi

United States District Court
Northern District of California

3

Lukk LMFT MFC, who treated Plaintiff weekly for roughly two years. *See id.* at 3180 ("She is experiencing PTSD, according to DSM 5 . . . ."). These diagnoses are not at all unexpected, given the particularly difficult childhood that Plaintiff experienced. *See id.* at 1005-06 (reporting that Plaintiff's father was physically and verbally abusive and that Plaintiff's sister accused the father of sexual assault, resulting in Plaintiff being placed in foster care). Plaintiff's medical histories, recorded by physicians at various points over the relevant period, also include multiple references to PTSD. *See id.* at 1582 ("[H]istory of . . . PTSD*."); see also id.* at 1612 ("[H]x PTSD.").

In addition to PTSD, the record reveals a host of other serious mental conditions. Plaintiff has been observed as displaying the following conditions: major depressive disorder, anxiety disorder, panic disorder, personality disorder, and learning disorder. *See, e.g.*, *id.* at 1007 (major depressive disorder), 1008 (anxiety disorder, panic disorder), 809-10 (personality disorder, learning disorder). Plaintiff has been prescribed, and is actively taking, various medications in an effort to reduce her symptoms to the extent possible. *See, e.g.*, *id.* at 1073, 1527, 1555.

**THE FIVE-STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id.* at § 416.920(a)(3)) and must use a five-step sequential evaluation process to determine whether the claimant is disabled. *Id.* at § 416.920; *see also id.* at § 404.1520. While the claimant bears the burden of proof at steps one through four (*see Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the required five-step sequential evaluation process. AR at 1089-90.

At step one, the ALJ must determine if the claimant is presently engaged in "substantial gainful activity" (20 C.F.R § 404.1520(a)(4)(i)), which is defined as work done for pay or profit and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ

United States District Court
Northern District of California

1    determined that Plaintiff had not performed substantial gainful activity during the relevant period.

2    AR at 1090.

3        At step two, the ALJ decides whether the claimant's impairment or combination of

4    impairments is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits

5    the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

6    (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be

7    found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the

8    following severe impairments: left shoulder impingement syndrome status-post rotator cuff repair;

9    cervical and lumbar spine degenerative disc disease; left hip degenerative joint disease; major

10   depressive disorder; generalized anxiety disorder; panic disorder; bilateral knee degenerative joint

11   disease; status-post left total knee arthroplasty; Sjogren's syndrome; and obesity. AR at 1091. The

12   ALJ found the following conditions to be non-severe: Baker's cyst; migraines; history of seizures;

13   sleep apnea; hypertension; environmental allergies; and abnormal liver/spleen findings. *Id.*

14       At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or

15   combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See*

16   20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe

17   impairments that are considered sufficiently severe so as to prevent any individual so afflicted

18   from performing any gainful activity. *Id.* at § 404.1525(a). Each impairment is described in terms

19   of "the objective medical and other findings needed to satisfy the criteria in that listing." *Id.* at §

20   404.1525(c)(3). In order for a claimant to show that his or her impairment matches a listing, it

21   must meet all of the specified medical criteria—an impairment that manifests only some of those

22   criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521,

23   530 (1990). If an impairment either meets the listed criteria, or if one or more impairments are

24   determined to be medically equivalent to the severity of that set of criteria, that person is

25   conclusively presumed to be disabled without a consideration of age, education, or work

26   experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an

27   impairment or combination of impairments that meets or equals the criteria or the severity of any

28   of the listings. AR at 1091-94.

United States District Court
Northern District of California

1    If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's

2    residual functional capacity ("RFC"), which is defined as the most that a person can still do

3    despite the limitations associated with their impairment. *See* 20 C.F.R. § 404.1545(a)(1). Here, the

4    ALJ determined that Plaintiff retained the ability to perform work at the light exertional level,

5    subject to certain exertional and postural exceptions, with an additional limitation allowing for

6    only occasional interaction with the public. AR at 1094.

7    Following the formulation of the RFC, the ALJ must determine—at step four—whether the

8    claimant is able to perform her past relevant work, which is defined as "work that [the claimant

9    has] done within the past 15 years, that was substantial gainful activity, and that lasted long

10    enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ

11    determines, based on the RFC, that the claimant can perform her past relevant work, the claimant

12    will not be found disabled. *Id.* at § 404.1520(f). Otherwise, at step five, the burden shifts to the

13    agency to prove that the claimant can perform a significant number of jobs that are available in the

14    national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the

15    Medical-Vocational Guidelines (commonly referred to as "the grids") (see 20 C.F.R Pt. 404 Subpt.

16    P, App. 2; or, alternatively, the ALJ may rely on the testimony of a vocational expert ("VE").

17    *Ford*, 950 F.3d at 1149 (citation omitted). A VE may offer expert opinion testimony in response to

18    hypothetical questions about whether a person with the physical and mental limitations imposed

19    by the claimant's medical impairment(s) can meet the demands of the claimant's previous work,

20    either as the claimant actually performed it or as generally performed in the national economy, or

21    the demands of other jobs that may be available in the national economy. *See* 20 C.F.R. §

22    404.1560(b)(1). An ALJ may also use other resources for this purpose, such as the Dictionary of

23    Occupational Titles ("DOT"). *Id.*

24    At step four, the ALJ determined—based on the VE's testimony—that Plaintiff could not

25    perform her past relevant work as an employment training specialist or sales route driver. AR at

26    1101-02. At step five, again based on the VE's testimony, the ALJ determined that Plaintiff would

27    have been able to perform the requirements of a marker, assembler, or sorter of agricultural

28    produce. *Id.* at 1102-03. Accordingly, the ALJ determined that Plaintiff had not been disabled at

1    any time during the relevant period. *Id.* at 1103.

2                                **DISCUSSION**

3           The ALJ in this case erred at step two (and beyond) regarding the evaluation of Plaintiff's

4    mental and physical impairments. This error results from the ALJ's omission of two of Plaintiff's

5    impairments, the ALJ's failure to assess the full extent of Plaintiff's impairments, as well as

6    the ALJ's failure to develop the record as to these impairments such that it might reflect the nature

7    and degree of their ensuing limitations.

8           As to the first of these errors, the ALJ's decision at step two inexplicably failed to assess

9    the severity of Plaintiff's cervical radiculopathy, PTSD, personality disorder, and learning

10   disorder. The evaluation at step two is a *de minimis* test intended to weed out the most minor of

11   impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *see also Edlund v. Massanari*,

12   253 F.3d 1152, 1158 (9th Cir. 2001) (explaining that the step two inquiry is "a de minimis

13   screening device to dispose of groundless claims") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290

14   (9th Cir. 1996)). An impairment is non-severe at step two only if the evidence establishes a slight

15   abnormality that has only a minimal effect on an individual's ability to work. *See Smolen*, 80 F.3d

16   at 1290.

17          Here, the ALJ erred at step two by failing to mention, let alone properly account for,

18   Plaintiff's cervical radiculopathy, PTSD, personality disorder, and learning disorder. As to

19   Plaintiff's cervical radiculopathy[4] and PTSD,[5] the record is replete with both references to and

20   diagnoses of such conditions—clearly indicating that they are not the kind of groundless claims

21   _____

22   [4] After an evaluation of Plaintiff and a review of her imaging and other relevant records, Dr. Lavorgna diagnosed
     Plaintiff with cervical radiculopathy. *See* AR at 1510. Multiple other physicians noted moderate to severe foraminal

23   stenosis at several levels (*see id.* at 640, 854, 2919, 3200, 3312), as well as limited range of motion (*see id.* at 569,
     582, 865, 1543-44) and tenderness of the neck (*see id.* at 566, 682, 887, 1014).

24   [5] The record indicates two independent diagnoses of PTSD (*see id.* at 1073, 3180), as well as references to PTSD in

25   several of Plaintiff's medical histories. *See id.* at 1582, 1612. The Commissioner's argument that the ALJ properly
     ignored these diagnoses and references on the ground that they were not diagnosed by an acceptable medical source

26   (*see* 20 C.F.R § 404.1513(a), (d)) is pure speculation. Indeed, the Commissioner's own brief notes four references to
     PTSD in Plaintiff's medical history, including a diagnosis of PTSD by an acceptable medical source as a component

27   of Plaintiff's depression. *See* Def.'s Mot. (dkt. 20) at 9. At the very least, such evidence should have triggered the
     ALJ's independent duty to develop the record, while also requiring an evaluation and explanation for the rejection of

28   Plaintiff's condition at step two.

United States District Court
Northern District of California

1    that step two is designed to weed out. Further, although the record includes somewhat less

2    information regarding Plaintiff's personality and learning disorders, the ALJ was still required to

3    address these two observed conditions at this stage. *See* AR at 809-10.

4         The Commissioner contends that any potential error at step two was harmless, as these

5    impairments were properly considered later in the sequential analysis. Where the ALJ fails to

6    consider an impairment at step two, such an error may be treated as harmless if "the decision . . .

7    reflect[s] that the ALJ considered any limitations posed by the impairment at either step four or

8    five." *Tadesse v. Kijakazi*, No. 20-16064, 2021 WL 6500149, at *1 (9th Cir. Nov. 30, 2021); *see*

9    *also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ

10   considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in

11   failing to include the bursitis at Step 2 was harmless.").

12        The errors in the present case cannot be characterized as harmless because Plaintiff's

13   cervical radiculopathy, PTSD, personality disorder, and learning disorder were not properly

14   accounted for at step three, during the formation of the RFC, or beyond. As to Plaintiff's PTSD

15   and personality disorder, the ALJ's decision is entirely devoid of *any* reference to these conditions

16   and thus their attendant limitations were clearly not considered in later steps of the sequential

17   analysis. Regarding Plaintiff's cervical radiculopathy and learning disorder, the ALJ improperly

18   concluded that Plaintiff did not have either of these conditions.[6] *See* AR at 1095, 1098, 1100,

19   1103. As such, the ALJ necessarily failed to consider the ensuing limitations of these two

20   conditions during the formulation of the RFC and at later steps of the analysis. None of these

21   errors were harmless, as the ALJ's total omission of these conditions—and their attendant

22   limitations—from the sequential analysis was not inconsequential to the ALJ's non-disability

23   determination. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)

24   (explaining that an error is harmless only if it is not prejudicial to the claimant or is otherwise

25   inconsequential to the ALJ's non-disability determination).

26        The second of the ALJ's errors with respect to the aforementioned conditions is the failure

27

28   ———————————
     [6] While discussed in greater detail *infra*, the ALJ's failure in this regard arises out of his improper analysis of the
     medical testimony.

United States District Court
Northern District of California

to develop the record such as to allow for a fair and reliable disability determination regarding the impairments' attendant limitations. By ignoring Plaintiff's PTSD and personality disorder, and incorrectly evaluating her cervical radiculopathy and learning disorder, the ALJ also failed to develop the record with respect to the limitations caused by these conditions. Because administrative proceedings in social security cases are inquisitorial, rather than adversarial, ALJs have an independent and special duty to fairly develop the record to ensure that the claimant's interests are considered. *See generally Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is incumbent on the ALJ even when the claimant is represented by counsel. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). An ALJ's duty to engage in even further record development is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence—as is the case here. *Id.* (citing *Tonapetyan*, 242 F.3d at 1150). This duty is "heightened" even further still when the claimant appears to be mentally ill—as is also the case here. *Tonapetyan*, 242 F.3d at 1150. Where this duty arises, the ALJ may discharge it "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open to allow supplementation of the record." *Id.* The ALJ's failure to develop the record in this case defies these well-developed teachings. While the ALJ analyzed Plaintiff's major depressive, anxiety, and panic disorders (*see* AR at 1091), this neither excuses nor explains his disregard for the evidence pertaining to Plaintiff's PTSD, personality disorder, and learning disorder. Having been presented with evidence of these mental impairments, the ALJ had a "heightened" duty to develop the record with respect to their limitations. *See Tonapetyan*, 242 F.3d at 1150.

On remand, the ALJ is **ORDERED** to convene another hearing at which Plaintiff (and any other interested witnesses) shall appear and questioned at length regarding the limitations she experiences as a result of *each* of her mental and physical impairments—with a particular emphasis on the above-discussed impairments. The ALJ is also **ORDERED** to contact Plaintiff's treatment providers such as to secure their detailed opinions regarding the limitations associated with *each* of her impairments. Thereafter, unless Plaintiff is found disabled, the ALJ is **FURTHER ORDERED** to modify any ensuing opinion to properly evaluate and weigh all

United States District Court
Northern District of California

1    medical opinions and to provide any ensuing explanations for such evaluations in compliance with

2    the case authorities (set forth below) that have interpreted the regulations applicable to Plaintiff's

3    pre-2017 application.

4          Under the cases interpreting the regulations applicable to Plaintiff's application, medical

5    opinions are "distinguished by three types of physicians: (1) those who treat the claimant (treating

6    physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3)

7    those who neither examine nor treat the claimant (nonexaming physicians)." *Lester v. Chater*, 81

8    F.3d 821, 830 (9th Cir. 1995). The medical opinion of a treating provider is given "controlling

9    weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic

10   techniques and is not inconsistent with the other substantial evidence in [the claimant's] case

11   record." 20 C.F.R. § 404.1527(c)(2). In cases where a treating doctor's opinion is not controlling,

12   the opinion is weighted according to factors such as the length of the treatment relationship, the

13   nature and extent of the treatment relationship, as well as the consistency of the opinion. *See id.* at

14   § 404.1527(c)(2)-(6)[7]. When a "treating doctor's opinion is not contradicted by another doctor, it

15   may be rejected only for 'clear and convincing' reasons." *Lester*, 81 F.3d at 830 (quoting *Baxter v.*

16   *Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1983)). But even where a "treating doctor's opinion is

17   contradicted by another doctor, the Commissioner may not reject this opinion without providing

18   'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

19   *Lester*, 81 F.2d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

20         While the court declines to identify *every* deficiency in the ALJ's assessment of the

21   medical opinions, some specific guidance will likely prove constructive. For example, Plaintiff's

22   treating primary care physician, Dr. Zuniga, opined that Plaintiff could work a low stress job with

23   an at-will sit/stand option, unscheduled breaks, and only occasional movement of the head. AR at

24   1534-38. The ALJ accorded Dr. Zuniga's opinion "less weight," citing to (among other things)

25   Plaintiff's "lack of cervical radiculopathy symptoms" and "ability to travel out of state." *Id.* at

26   1100. As discussed above, however, the record is teeming with evidence of Plaintiff's cervical

27

28   [7] Unless it is a treating source's medical opinion entitled to "controlling weight," these factors should also be used to "evaluate *every* medical opinion" that the Commissioner receives. *Id.* at § 404.1527(c) (emphasis added).

United States District Court
Northern District of California

radiculopathy and related symptoms. *See supra* note 4 and accompanying text. This court echoes the sentiment that "judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor." *Bechtold v. Comm'r of Soc. Sec.*, No. 2:19-CV-0085-DMC, 2020 WL 2319873, at *12 (E.D. Cal. May 11, 2020) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). It appears that the ALJ in the present case yielded to this temptation, replacing the opinion of trained medical professionals with that of his own as to Plaintiff's spinal condition. The ALJ also failed to explain how Plaintiff's ability to travel is a sufficient reason for according less weight to Dr. Zuniga's opinion. Such threadbare justifications are not the kind of "specific and legitimate" reasons necessary to reject a treating physician's opinion. *See Lester*, 81 F.2d at 830 (quoting *Murray*, 722 F.2d at 502). Finally, the decision does not include any indication that, in assessing Dr. Zuniga's opinion, the ALJ weighed the factors outlined in 20 C.F.R. § 404.1527(c)(2)-(6)—a requirement where a treating doctor's opinion is not given controlling weight. Given Dr. Zuniga's years-long relationship with Plaintiff, such factors would likely weigh in favor of affording more weight to her opinion. At the very least, the ALJ should explain why his assessment of these factors compels a different result.

Perhaps most significantly,[8] the ALJ afforded "less weight" to the opinion of Dr. O'Dowd. AR at 1098-99. In doing so, however, it appears that the ALJ overlooked (and at times mischaracterized) much of the evidence in the record. For example, the ALJ found that Plaintiff's "learning challenges" were inconsistent with the record, relying (in part) on Plaintiff's ability to "pursue college-level learning." *Id.* at 1098. The ALJ failed to mention, however, that Plaintiff received accommodations through Disabled Students' Programs and Services. *Id.* at 1006. Dr. O'Dowd's conclusion that Plaintiff would need time to reconnect with co-workers was also rejected by the ALJ due to Plaintiff's purported ability to "maintain a relationship with her best friend" and "visit[] her friend and her friend's home." *Id.* It is unclear, however, how Plaintiff's ability to maintain a single *friendship* renders her capable of immediately developing functional

---

[8] As noted previously, the Appeals Council's remand order demanded a more adequate evaluation of Dr. O'Dowd's report. AR at 1202-03.

*working relationships* with co-workers. Nor does the ALJ address the fact that Plaintiff frequently leaves her best friend's home due to arguments between the friend and the friend's husband. *See id.* at 1130 ("[I]f her and her husband start arguing I, it just triggers me really bad . . . I wind up even leaving or I'll go outside away from their argument until the[ir] done."). Given that similar tensions are likely to arise in a work setting, the ALJ should have addressed this concern in greater detail.[9] Much of the ALJ's reasons for affording less weight to Dr. O'Dowd's opinion, therefore, were neither sufficiently "specific and legitimate" nor supported by substantial evidence in the record. *Lester*, 81 F.2d at 830 (quoting *Murray*, 722 F.2d at 502).

As for the evaluation of Plaintiff's own testimony in any ensuing opinion, the ALJ is directed to ensure that the following standards are adhered to when explaining how Plaintiff's testimony was evaluated. When a claimant has medically documented impairments that "might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying 'which testimony [the ALJ] found not credible' and explaining 'which evidence contradicted that testimony.'" *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). As a matter of law, it is improper "for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). But while "lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [their] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause her

---

[9] Plaintiff's difficulty functioning in social settings is further exemplified through additional instances in the record. *See, e.g.*, AR at 1129 (describing an incident in which Plaintiff's anxiety forced her to leave a grocery store after other shoppers appeared on both ends of an aisle in which Plaintiff was shopping).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    alleged symptoms. AR at 1097. The ALJ found, however, that Plaintiff's testimony regarding her

2    symptoms was "inconsistent with the medical and other evidence." *Id.* at 1095, 1097. While the

3    ALJ provided relatively detailed explanations as to his rejection of Plaintiff's testimony (*see id.*),

4    the ALJ's error ultimately lies in the fact that such explanations were neither clear nor convincing.

5           To note a few examples, the ALJ relied in part on "mild to moderate multilevel neural

6    foraminal narrowing" and "no evidence of . . . cervical radiculopathy symptoms . . . ." *Id.* at 1095.

7    As noted *supra*, however, there were several findings of *moderate to severe* multilevel foraminal

8    narrowing, as well as other symptoms of cervical radiculopathy—including a diagnosis by Dr.

9    Lavorgna. *See supra* note 4 and accompanying text. The ALJ's abbreviated (and somewhat

10   misleading) summary of this evidence thus fails to meet the clear and convincing standard. The

11   ALJ further discounted Plaintiff's testimony regarding her neck and spinal pain by noting that, in

12   May of 2021, Plaintiff reported that she was "doing well" and "presently desires no treatment."

13   AR at 1095. But to discredit years of Plaintiff's previous complaints in reliance on a single

14   statement is far from sufficient—ALJ's are not permitted to "cherry-pick" from the record in

15   support of a denial of benefits. *See Garrison*, 759 F.3d at 1023 n.23 (quoting *Scott v. Astrue*, 647

16   F.3d 734, 739-40 (7th Cir. 2011)).[10]

17          Finally, the ALJ again relied on Plaintiff's ability to travel out of state—albeit a single

18   time—to discredit Plaintiff's testimony. It has long been established, however, that "[d]isability

19   does not mean that a claimant must vegetate in a dark room excluded from all forms of human and

20   social activity." *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quoting *Smith v. Califano*,

21   637 F.2d 968, 971 (3d Cir. 1981)). Many activities that a claimant may engage in "are not easily

22   transferable to what may be the more grueling environment of the workplace, where it might be

23   impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

24   1989). The ALJ in the present case made no attempt to explain how Plaintiff's ability to travel out

25   of state on a single occasion renders her capable of functioning in the workplace. *See K.G. v.*

26

27   [10] The court also notes that the Appeals Council's remand order specifically instructed the ALJ to consider "the *entire*
     period at issue." AR at 1203 (emphasis added). While a contemporaneous statement regarding Plaintiff's symptoms
28   may suggest that her symptoms are *recently* improving (at least as to that day), it does not account for the entire period
     at issue—commencing in 2013. *See supra* note 3.

*Kijakazi*, No. 21-CV-02953-NC, 2022 WL 2207102, at *5 (N.D. Cal. June 21, 2022) ("A generalized statement that travel is inconsistent with a claimant's alleged limitations is insufficient without indication of what activities the claimant undertook or how much . . . w[as] required during their travel.").[11] On remand, if the ALJ seeks to discredit Plaintiff's pain and symptom testimony—which, the court wishes to stress, is a tall order—they must do so in accordance with the authorities set forth above.[12]

## CONCLUSION

Accordingly, for the reasons stated herein, Plaintiff's Motion for Summary Judgment (dkt. 19) is **GRANTED**, and Defendant's Cross-Motion (dkt. 20) is **DENIED**, and the case is remanded for further proceedings consistent with the findings and conclusion set forth herein.

**IT IS SO ORDERED.**

Dated: October 12, 2022

_____
ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California

---

[11] *See also Ciletti v. Berryhill*, No. 17-CV-05646-EMC, 2018 WL 2761873, at *5 (N.D. Cal. June 8, 2018) ("[T]he ALJ relied on the fact that [Plaintiff] went on a Disney cruise . . . to discredit his testimony . . . That judgment was legally erroneous because . . . the ALJ should have considered whether participation in a cruise was incompatible with [Plaintiff's] claimed limitations.").

[12] Likewise, the ALJ's rejection of the third-party function report suffers the same errors as outlined with respect to Plaintiff's testimony.